UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JULIE ANN P.,[1]

                               Plaintiff,                      Case # 21-cv-06235-FPG

    v.                                                      DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,
                                  Defendant.

_____

## INTRODUCTION

On May 31, 2019, Plaintiff Julie Ann P. filed an application for Disability Insurance Benefits under Title II of the Social Security Act (the "Act"). Tr. 176.[2] The Social Security Administration (the "SSA") denied her claim and Plaintiff appeared and testified at a hearing before Administrative Law Judge ("ALJ") Matthew G. Levin on August 18, 2020. Tr. 30-57. On September 19, 2020, the ALJ issued an unfavorable decision. Tr. 8-26. The Appeals Council denied Plaintiff's request for review on September 23, 2020, making the ALJ's decision the final decision of the SSA. Tr. 1. Plaintiff then appealed to this Court on February 3, 2021. ECF No. 1.

Plaintiff and the Commissioner both moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 8, 9. For the reasons that follow, Plaintiff's motion is DENIED, the Commissioner's motion is GRANTED, and the ALJ's decision is AFFIRMED.

---

[1] In order to better protect personal and medical information of non-governmental parties, this Decision and Order will identify the plaintiff using only her first name and last initial in accordance with this Court's Standing Order issued November 18, 2020.

[2] "Tr." refers to the administrative record in this matter. ECF No. 7.

## LEGAL STANDARD

### I.      District Court Review

When it reviews a final decision of the SSA, it is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Rather, the Court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. §§ 405(g), 1383(c)(3)) (other citation omitted). The Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted).

### II.     Disability Determination

To determine whether a claimant is disabled within the meaning of the Act, an ALJ follows a five-step sequential evaluation: the ALJ must determine (1) whether the claimant is engaged in substantial gainful work activity; (2) whether the claimant has any "severe" impairments that significantly restrict his or her ability to work; (3) whether the claimant's impairments meet or medically equal the criteria of any listed impairments in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and if they do not, what the claimant's residual functional capacity ("RFC") is; (4) whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work; and (5) whether the claimant's RFC permits him or her to perform alternative substantial gainful work which exists in the national economy in light of her age, education, and work experience. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986); *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *see also* 20 C.F.R. § 404.1520.

**DISCUSSION**

**I.     The ALJ's Decision**

The ALJ analyzed Plaintiff's claim for benefits using the process described above.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 28, 2018. Tr. 17. At step two, the ALJ found that Plaintiff has degenerative disc disease, which qualifies as a severe impairment. *Id*. at 18. The ALJ also noted that Plaintiff presented evidence of suffering from Graves' disease, but that this disease is not a severe impairment because Plaintiff did not allege any functional limitations relating to the disease and the disease is well-managed with medication. *Id.* At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meet(s) or medically equal(s) the severity of one of the Listings. *Id*. at 21.  The ALJ determined that Plaintiff maintained the RFC to perform "light work as defined in 20 C.F.R. 404.1567(b) except the claimant can frequently climb stairs and occasionally climb ladders, ropes and scaffolds. Further, the claimant can balance, kneel and crouch on an unlimited basis. The claimant can occasionally stoop and crawl. The claimant can frequently hold her head in a static position (looking forward) and occasionally turn her head left and right."  *Id.* In formulating the RFC, the ALJ considered the symptoms that Plaintiff alleged.  *See Id.* at 21-22. The ALJ also evaluated the intensity, persistence and limiting effects of Plaintiff's symptoms.  *Id.* at 22-28.

At step four, the ALJ concluded that Plaintiff was able to perform past relevant work as a medical records technician. Tr. 28. At step five, the ALJ concluded that there were jobs that existed in the economy that Plaintiff could perform.  Tr. 29.  As such, the ALJ found that Plaintiff was not disabled, as defined under the regulations.

## II.   Analysis

Plaintiff's arguments on appeal to this Court fall into two categories. First, Plaintiff argues that the ALJ erred in his step three analysis and that if the ALJ had properly analyzed the Listings, then the ALJ would have had to find Plaintiff was disabled. Second, Plaintiff argues that the ALJ committed legal errors when evaluating the medical opinion evidence. The Court will address each argument in turn.

### A.  ALJ's Analysis at Step Three

Plaintiff takes issue with the ALJ's determination that she did not have an impairment that medically equaled a Listing at step three. Specifically, the ALJ considered Listing 1.04(A) (nerve root compression) and noted that subsequent to "the claimant's [second] surgical intervention, her deep tendon reflexes have been recorded as symmetric and her sensation as intact." Tr. 21. Since "sensory or reflex loss" is one of the required conditions in Listing 1.04(A), the ALJ determined that Plaintiff did not have an impairment that medically equaled Listing 1.04(A). Plaintiff disputes this finding, arguing that the ALJ erred by not considering "evidence of limitation of motion of the spine, motor loss, muscle weakness, and sensory or reflex loss," that existed prior to her second surgical intervention. ECF No. 8-1 at 14. Plaintiff argues that if the ALJ had considered the evidence of her impaired reflexes prior to her second surgery, the ALJ would have been required to find Plaintiff disabled, or otherwise, explain why the Listing is not met at step three. *Id.* at 16.

To meet Listing 1.04(A), a claimant must show proof of the following conditions:

1.  A disorder of the spine, including but not limited to "herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture," and
2.  "Compromise of nerve root (including the cauda equina) or the spinal cord," and
3.  "Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness)," and
4.  "Sensory or reflex loss," and if there is involvement of the lower back,

5.  "Positive straight-leg raising test" in both the sitting and supine position.
    position

*Monsoori v. Comm'r of Soc. Sec.*, No. 1:17-CV-01161, 2019 WL 2361486, at *4 (W.D.N.Y. June 4, 2019).

The SSA has provided further guidance regarding the assessment of Listing 1.04(A) in the form of an Acquiescence Ruling ("AR") issued in 2015. *See* AR 15-1(4), *Radford v. Colvin: Standard for Meeting the Listing for Disorders of the Spine with Evidence of Nerve Root Compression*, 80 F.R. 57418-02 (2015). While these rulings do not carry the full force of law, the Supreme Court has held that an agency's interpretation of its own regulations is entitled to substantial deference. *See Kisor v. Wilkie*, 139 S. Ct. 2400, 2415-19 (2019). In AR 15-1(4), the SSA specified that "the entire set of criteria [in Listing 1.04(A)] must be present at the same time on examination" in order to meet the severity of Listing 1.04(A). AR 15-1(4), 80 F.R. 57418-02, at *57420. In other words, "when the listing criteria are scattered over time, wax and wane, or are present on one examination but absent on another, the individual's nerve root compression would not rise to the level of severity required by listing 1.04A." *Id.* Further, this level of severity—i.e., the simultaneity of the symptoms—must "continue, or be expected to continue, for at least 12 months," in order for a disorder of the spine to meet the durational requirement of the Listing. *Id.* Without both the severity and durational requirements met, Listing 1.04(A) is not met. *See id.*

While the Court notes that AR 15-1(4) was issued in response to the Fourth Circuit's holding in *Radford v. Colvin*, 734 F.3d 288 (4th Cir. 2013), that plaintiff could meet Listing 1.04(A) even though his relevant symptoms were not always simultaneously present, the Second Circuit has not made a similar holding. Accordingly, this Court will join other courts in this District that accord substantial deference to the policy position set forth in AR 15-1(4). *See Joe N. v. Comm'r of Soc. Sec.*, No. 19-CV-1384, 2021 WL 4316556, at *4 (W.D.N.Y. Sept. 23, 2021) (according

substantial deference to AR 15-1(4)); *Casillas v. Comm'r of Soc. Sec.*, No. 1:19-CV-00629, 2020 WL 4283896, at \*4 (W.D.N.Y. July 27, 2020) ("This Court has previously held that, in the absence of a similar holding from the Second Circuit, it will afford this aspect of AR 15-1(4) substantial deference); *Wahler v. Comm'r of Soc. Sec.*, No. 1:19-CV-00549, 2020 WL 3496300, at \*4 (W.D.N.Y. June 29, 2020) (according substantial deference to the policy position set forth in AR 15-1(4)); *Ramirez Morales v. Berryhill*, No. 6:17-CV-06836, 2019 WL 1076088, at \*4 (W.D.N.Y. Mar. 7, 2019) (According substantial deference to the policy position set forth in AR 15-1(4)).

Here, Plaintiff does not point to any medical evidence in the record showing that the conditions in Listing 1.04(A) were met "at the same time on examination." 80 F.R. 57418-02, at \*57420. Rather, the medical evidence that Plaintiff relies on is "scattered" over the course of her longitudinal medical history. *Id.* Since Plaintiff can only point to evidence of impaired reflexes that existed prior to her second surgery, this suggests that her condition improved following the second surgery, further undermining any argument that her impairment equaled the severity required to meet Listing 1.04(A). The claimant bears the burden at step three to prove she meets the requirements necessary to meet or equal the Listings. *See Monsoori*, 2019 WL 2361486, at \*3. Because the Plaintiff does not point to any medical evidence of the simultaneous occurrence of the conditions in Listing 1.04(A), Plaintiff has failed to meet that burden and the ALJ's decision at step three is affirmed.

### B. Evaluation of Medical Opinion Evidence

Plaintiff argues that the ALJ did not properly evaluate the persuasiveness of various medical opinions. As a result of the alleged improper evaluation, Plaintiff contends that the ALJ assigned lower weight than should have been otherwise accorded to the various opinions and,

therefore, did not incorporate all of the functional limitations from those opinions. See ECF No. 8-1 at 17-30.

The ALJ must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

The ALJ must "articulate how [they] considered the medical opinions" and "how persuasive [they] find all of the medical opinions." *Id.* §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1). The two most important factors for determining the persuasiveness of medical opinions are consistency and supportability. *See* 20 C.F.R. 404.1520c(a). An ALJ is specifically required to "explain how [they] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* §§ 404.1520c(c)(1), 416.920c(c)(1). The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2).

An "ALJ is not obligated to reconcile explicitly every conflicting shred of medical testimony," *Chelsea A. v. Kijakazi*, No. 21-CV-6224, 2023 WL 3751949, at *4 (W.D.N.Y. June 1, 2023) (quoting *Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir. 1983)), but only required to assess "the consistency of the opinion with the record as a whole," *Michele B. v. Comm'r of Soc. Sec.*,

No. 1:20-CV-00975, 2021 WL 5543940, at *3 (W.D.N.Y. Nov. 27, 2021). That is what the ALJ did here.

**1. Opinions of Dr. Scofield, Dr. Zeiman and PA Larson.**

First, Plaintiff contends that the ALJ failed to properly apply the "supportability and consistency factors" to the opinions of Dr. Scofield, Dr. Zeiman and PA Larson. ECF No. 8-1 at 18. Plaintiff believes that if the ALJ had applied the appropriate legal standard, the ALJ would have accorded greater weight to these opinions and the RFC would have reflected the limitations recommended by these physicians and work would have been precluded and the ALJ would have had to find disability at step 5. *Id.* Plaintiff argues that the ALJ should have considered the consistency of Dr. Scofield, Dr. Zeiman and PA Larson as they specifically "relat[e] to reaching and neck limitations." ECF No. 8-1 at 19. Respecting Dr. Scofield's and PA Laron's opinions, Plaintiff's contentions are incorrect. Further, Plaintiff's misunderstands the ALJ's obligations respecting Dr. Zeiman's opinion. Because Dr. Zeiman's opinion is stale, the ALJ was not permitted to rely on Dr. Zeiman's opinion at all. *See infra*. The Court will discuss each of these opinions in turn.

**a. Dr. Scofield**

Contrary to Plaintiff's assertion, the ALJ specifically discussed Dr. Scofield's opinion as it relates to neck limitations. The ALJ noted that "Dr. Scofield's opinion that that the claimant can never move her neck is not consistent with either the claimant's reported ability to increase her activity to the point of opening a bakery or consistent with recent physical examination describing the claimant as having a full range of motion in her neck." Tr. 27. As it relates to reaching limitations, Dr. Scofield's opinion was completely silent, so there was nothing for the ALJ to

discuss regarding the consistency or supportability of the nonexistent portion of Dr. Scofield's opinion.

Further, the ALJ discussed the consistency of Dr. Scofield's opinion with the record as a whole. The ALJ noted that Dr. Scofield provided no support for a limitation of two hour of standing/sitting and that it was not consistent with "claimant's gait as normal" and descriptions of Plaintiff "having the ability to move about the examination room normally." Tr. 27. The ALJ further analyzed Dr. Scofield's limitations respecting Plaintiff's attention and attendance at work, stating that the former opinion is inconsistent with the doctor's own treatment notes and that the latter opinion has no support in the record and based on speculation. *Id.* Upon review of the ALJ's opinion, it is clear that the ALJ thoroughly assessed Dr. Scofield's opinion for consistency and supportability. The Court finds no legal error in the evaluation of Dr. Scofield's opinion.

### b. Dr. Zeiman

In evaluating Dr. Zeiman's opinion, the ALJ determined that Dr. Zeiman's opinion was inconsistent with Plaintiff's longitudinal record. The ALJ reached this decision first by noting that the opinion was rendered prior to Plaintiff's second surgery. Tr. 28. Next, the ALJ discussed that many of Plaintiff's symptoms were improved or improving following the surgery. *Id.* Those improved or improved symptoms following the second surgery constituted the evidence in the record that was inconsistent with Dr. Zeiman's opinion. *Id.* These reasons are clearly stated and discussed in his decision and the Court finds no reason to find error in the ALJ's evaluation of Dr. Zeiman's opinion as unpersuasive. *Id.*

The ALJ was also correct to find Dr. Zeiman's opinion as unpersuasive because Dr. Zeiman's opinion was stale. "In considering whether a medical opinion is stale, courts have frequently pointed to surgeries occurring subsequent to the medical opinion as evidence of the

claimant's deteriorating condition." *Vincent B. v. Comm'r of Soc. Sec.*, 561 F. Supp. 3d 362, 367 (W.D.N.Y. 2021). Where the ALJ's decision does not account for that deterioration, then the Court considers the opinion stale. *See Fambo v. Comm'r of Soc. Sec.*, 474 F. Supp. 3d 603, 608 (W.D.N.Y. 2020) ("[A] medical opinion may be stale if it does not account for the claimant's deteriorating condition."). Conversely, where an opinion predates a surgery that precipitates a claimant's ameliorating condition and the opinion does not account for the subsequent amelioration, it stands to reason that such medical opinion is also stale. "[M]edical source opinions that are . . . stale, and based on an incomplete medical record may not be substantial evidence to support an ALJ finding." *Fambo*, 474 F. Supp. 3d at 608.

Here, Dr. Zeiman's opinion predates Plaintiff's second surgery after which the medical evidence in the record shows that her symptoms improved. Tr. 28. Dr. Zeiman's opinion does not account for Plaintiff's improved condition. Accordingly, Dr. Zeiman's opinion could not constitute substantial evidence and it was not legal error for the ALJ to evaluate the opinion as unpersuasive on this basis alone.

### c. PA Larson

Plaintiff asserts that the ALJ rejected PA Larson's opinion "due to the format" of the opinion. ECF No. 8-1 at 25. However, the Plaintiff's argument misrepresents the ALJ's position. While the ALJ does observe that PA Larson's opinion was "rendered on a checklist style form," Tr. 28, the ALJ goes further to criticize the opinion for failing to make "reference to objective medical [evidence] to support it." *Id.* Essentially, the grounds for determining that PA Larson's opinion had little persuasive value was the lack of supportability and inconsistency with the record and not the format in which the opinion was rendered. To support this conclusion, the ALJ highlights inconsistencies between PA Larson's opinion and Dr. Scofield's opinion and Plaintiff's

own testimony at the hearing. *Id.* Specifically, the ALJ highlighted that while PA Larson's opinion states that Plaintiff "is able to occasionally turn her head, but is rarely able to hold her neck in a static position," this is the exact opposite of Plaintiff's testimony that she has "more difficulty moving her head left and right as well as Dr. Scofield's opinion that claimant can frequently hold her head in a static position." *Id.* There is no evidence to support Plaintiff's contention that the ALJ rejected PA Larson's opinion based solely on its format. Instead, the record shows that the ALJ determined PA Larson's opinion to be unsupported and inconsistent with the medical record and discussed his reasons for making this determination.

Additionally, Plaintiff argues that the ALJ improperly rejected PA Larson's absence related limitations. ECF No. 8-1 at 26. Specifically, Plaintiff asserts that the ALJ's basis for rejecting this limitation was because the ALJ found that the limitation "appears based purely on speculation." Tr. 28. Plaintiff contends that the ALJ may not simply discount a medical opinion as speculative without obtaining clarification. ECF No. 8-1 at 26. However, Plaintiff again misunderstands the ALJ's analysis. While the ALJ did conclude PA Laron's opinion was based on speculation, the basis for that conclusion was not the ALJ's own speculation, but the fact that this limitation was "not consistent with examination findings describing intact attention and concentration." Tr. 28. Specifically, it conflicted with Dr. Deneen's opinion stating that Plaintiff had intact concentration. See Tr. 1532 and 942. Accordingly, the ALJ did not commit error, because the ALJ's conclusion was based on medical evidence in the record and not his own speculation.

2.  **Opinions of Dr. Dantoni, Dr. Lawrence and Dr. Ehlert**

Respecting the opinions of Dr. Dantoni, Dr. Lawrence and Dr. Ehlert, Plaintiff argues that the ALJ failed to identify any medical evidence that was inconsistent with their opinions. ECF No. 8-1 at 27. The Court disagrees and will discuss each doctor's opinion in turn.

### a. Dr. Dantoni

The ALJ found the opinion of Dr. Dantoni to be of "little persuasive value." Tr. 26. Plaintiff argues that this evaluation was improper because the ALJ failed to identify any evidence inconsistent with Dr. Dantoni's opinion. ECF No. 8-12 at 27. The Court construes Plaintiff's claim as arguing that the ALJ failed to apply the consistency factor when evaluating the persuasiveness of Dr. Dantoni's opinion. The Court disagrees.

The ALJ applied the consistency factor when he referred directly to the opinions of Drs. Lawrence and Ehlert in comparison to Dr. Dantoni's opinion and explicitly noted that their opinions were "well supported and consistent with the evidence in the record." Tr. 25. This language is sufficient to demonstrate the ALJ considered the supportability and consistency of the opinions. *See Sandra M. v. Comm'r of Soc. Sec.*, No. 3:22-CV-00485, 2023 WL 4972707, at *6 (N.D.N.Y. Aug. 3, 2023) (ALJ properly considered the consistency factor by comparison to another doctor's opinion that the ALJ thoroughly evaluated and described in their opinion). Because the ALJ specifically and thoroughly discussed the opinions of Dr. Lawrence and Dr. Ehlert, it was sufficient for the ALJ to evaluate the consistency of Dr. Dantoni's opinion with the medical record by reference to those opinions. Accordingly, where an ALJ's analysis "affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence such that additional analysis would be unnecessary or superfluous, . . . remand is not necessary merely because an explicit function-by-function analysis was not performed." *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d. Cir. 2013).

### b. Dr. Lawrence and Dr. Ehlert

Finally, Plaintiff takes issue with the ALJ's evaluation of Dr. Lawrence and Dr. Ehlert's medical opinions. The ALJ determined that these opinions were "overall persuasive," as they were

"well supported and consistent with the evidence in the record." Tr. 25. Plaintiff claims that the ALJ committed legal error because the ALJ did not compare the opinions "with any other medical opinion within the record." ECF No. 8-1 at 27. The Court disagrees.

As an initial matter, Plaintiff's assertion that the ALJ did not compare the opinions to other medical opinions is inaccurate. As previously discussed, the ALJ compared Dr. Lawrence and Dr. Ehlert's opinion directly with Dr. Dantoni's opinion. Specifically, the ALJ noted that "Dr. Lawrence and Dr. Ehlert has the opportunity to review both the examination findings and opinion of Dr. Dantoni in making their assessments as well as the other evidence in the record, which renders their finds more persuasive." Tr. 26. Moreover, Plaintiff's assertion that the ALJ ought to have compared the opinions of Dr. Lawrence and Dr. Ehlert with other medical opinion is a higher standard than required by the SSA. The two most important factors for determining the persuasiveness of medical opinions are consistency and supportability. 20 C.F.R. 404.1520c(a). The ALJ did just that by evaluating the opinions in comparison to the medical "evidence as a whole, including examination findings." Tr. 25-26. The ALJ went even further to evaluate the opinions in light of additional evidence that was received subsequent to the issuance of their opinion, noting that the additional evidence was cumulative. Accordingly, the ALJ determined that such new evidence did not undermine the persuasiveness of those opinions.

That Plaintiff can point to other evidence that would lead to a different outcome is unavailing. The standard for review in this Court is whether the ALJ's decision was based on substantial evidence and since the ALJ properly evaluated the opinions for consistency and support in the record as well as having considered "other factors," this Court concludes that the ALJ properly evaluated the opinions of Dr. Lawrence and Dr. Ehlert and that there are no grounds to remand on this issue raised by Plaintiff. "[W]here the record permits the court to glean the rationale

of an ALJ's decision, we do not require that the ALJ have mentioned every item of testimony presented to h[er]." *Whittaker v. Comm'r of Soc. Sec.*, No. 2:18-CV-02697, 2020 WL 2933863, at *4 (E.D.N.Y. June 2, 2020).

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings, ECF No. 8, is DENIED, the Commissioner's motion for judgment on the pleadings, ECF No. 9, is GRANTED, and the Commissioner's decision is AFFIRMED. The Clerk of Court is respectfully directed to enter judgment and close this case.

IT IS SO ORDERED.
Dated: September 15, 2023
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York